UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case Number 06-048 (PLF) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **NARASE BOB OUDIT** | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing.

**BACKGROUND**

On February 22, 2006, a grand jury charged the defendant with four counts of Honest Services Mail and Wire Fraud, one count of Extortion, and four counts of Bribery. On July 28, 2006, the defendant pleaded guilty to Count Six, which charged him with Bribery.

The charges stem from the defendant's use of his position as a project manager at the District of Columbia's Office of Property Management ("OPM") to demand bribes from three different contractors.

Specifically, in August 2002, Oudit demanded a $294,000 payment from Contractor A in exchange for permitting Contractor A to receive a time extension. Oudit extorted Contractor A by threatening to ruin the contractor's business. Oudit told Contractor A, "Here's what's going to happen. It's going into default. If it goes into default, you lose both [projects]. You don't want to do that. Then you're going to, bonding company takes over and they finish the job..... And then you're going to be sued. Now you don't want that." Oudit followed through on this threat by informing the contractor's bonding company that OPM was prepared to terminate the

contractor. Oudit received, as bribe payments, $13,500 in prerecorded FBI funds.

Also in 2002, Oudit demanded a bribe from Contractor B. The vehicle for the bribe demand was BT Contractors, a general contractor that Oudit surreptitiously operated.[1] Oudit threatened that unless Contractor B would request a $312,519 contract modification for BT Contractors, Oudit would ensure that Contractor B would not receive a necessary time extension. In Oudit's words, "Now don't play hardball with me, alright? Because I'm going to take it away. Then you're all going to eat this."

From May 2002 through early 2003, Oudit demanded and received bribes from Contractor C, again using BT Contractors as the vehicle. Oudit directed Contractor C to inflate two bids and include $40,000 for a subcontract for BT, for which BT would perform no work. BT received $38,500 in bribe payments.

## SENTENCING GUIDELINES

The plea agreement contains a number of provisions regarding the application of the sentencing guidelines. Among the provisions is the defendant's agreement that although he is pleading guilty only to Count Six, the rest of his conduct is relevant conduct, pursuant to U.S.S.G. § 1B1.3.

If the court were to adopt these sentencing provisions, which are summarized in and endorsed by the Presentence Report, the defendant's total offense level would be 21, which corresponds to a term of imprisonment of 37-46 months. The government does not oppose a

---

[1] Oudit tried to hide his stake in BT Contractors by designating his accountant as BT's president. This stealth was necessary because Oudit's ongoing participation in government decisions that affected a company that he owned, was a flagrant violation of 18 U.S.C. § 208, which prohibits financial conflicts of interest.

sentence at the low end of this range, and asks the Court to sentence the defendant to 37 months of incarceration.

**18 U.S.C. § 3553(a) FACTORS**

Although the parties agree that the defendant's guidelines range is 37-46 months, the defendant is free to argue that a sentence of 37 months of imprisonment is unreasonably high, considering the factors set forth in 18 U.S.C. § 3553(a). Among the factors enumerated in § 3553(a) are: "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the seriousness of the offense, ... respect for the law, and ... just punishment for the offense;" and "adequate deterrence."

The defendant's sordid misuse of his office to extort contractors, repeatedly, merits a 37-month sentence. Indeed, a less severe sentence would be grossly unjust and would not serve any of the § 3553(a) factors identified above.

On the scale of corruption cases, this one is egregious. The defendant did not make an isolated demand for a bribe – he demanded bribes day after day and month after month. He did not approach one contractor; he demanded bribes from three of them. The defendant did not simply ask for bribes; he used economic threats against two of the contractors, and even called one of the contractors' bonding companies. These were not requests for a $50 bribe, but demands for bribes totaling hundreds of thousands of dollars. A crime (really a series of crimes) of this nature calls for stern punishment.

The presentence report indicates that the defendant suffers from a number of medical conditions, and he takes several types of medication. In fashioning a sentence, the Court must consider the "the need for the sentence imposed ... to provide the defendant with needed ...

medical care." 18 U.S.C. § 3553(a)(2)(D). *See United States v. Whipple*, 414 F.3d 887, 888 (8th Cir. 2005) (sentencing court must consider the defendant's health when imposing a post-*Booker* sentence). While the defendant's medical conditions are serious ones, there is no indication that they cannot be treated within the Bureau of Prisons. Were the Court to impose a prison sentence, the government would not oppose permitting the defendant to self-report. During the time interval before the defendant's incarceration, the Bureau of Prisons could locate a facility that can best treat the defendant's medical needs (such as the Federal Prison Hospital at Butner, North Carolina).

## CONCLUSION

The defendant's flagrant conduct merits a sentence of 37 months of incarceration.[2]

           Respectfully submitted,

           JEFFREY A. TAYLOR
           United States Attorney


           _____
           HOWARD R. SKLAMBERG
           Assistant United States Attorney
           Fraud & Public Corruption Section
           555 Fourth Street, N.W.
           Washington, DC 20001

---

[2] Throughout this litigation, the defendant has had court-apppointed attorneys. The presentence report indicates that the defendant has a fairly high net worth. The government asks that the Court consider whether a contribution order is appropriate.

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a copy of the foregoing motion was served by electronic mail upon Thomas Abbenante, Esq., t_abbenante@yahoo.com, this 29th day of December, 2006.

_____
Howard R. Sklamberg